St. Louis, K. C. & C. Ry. Co. v. Dewees and others.[1]

*(Circuit Court, E. D. Missouri.   March 24, 1885.)*

INJUNCTIONS—SCRAMBLE FOR POSSESSION—RAILROADS.

   Where there is a dispute as to the possession and right of possession of a railroad track, which is not in the actual possession of either party to the controversy, this court will not interfere by injunction.

In Equity.

*Noble & Orrick*, for complainant.

*Davis & Davis, Farrish & Jones, Harris & Dewees*, and *Nathan Frank*, for defendants.

Brewer, J., *(orally.)*   In this case, as I intimated to counsel, I have read all the affidavits through carefully, and these facts suggest themselves to me as material:   It appears that some years ago there was a corporation called the "Forest Park Railroad Company," which gave a trust deed to secure certain bonds to the amount of $50,000.   A year or two after, it gave a second trust deed to secure several hundred thousands, as I remember, of bonds, and the allegation of the bill is that $50,000 of these bonds were used to cancel the $50,000 covered by the first trust deed, and that only $200,000 of the bonds secured by the second trust deed were issued.   Thereafter this company, which had already completed a small fragment of a road, entered into a contract with certain parties for further work; in pursuance of which, the contractors, Knapp & Co., by themselves and subcontractors, did a certain amount of work.   Receiving no pay and having filed liens, the subcontractors proceeded in this court to bring two actions, obtained judgments, decrees, and orders for the sale of the property.   In these actions the company alone was made defendant; that is, the trustees in the first or second mortgages were not made parties.   Upon the decrees a sale was made, and the property sold to Messrs. Dyer and Garland.   The sale was confirmed and a deed made by the marshal, and the purchasers last fall sold the property to the plaintiff.   At the time of this sale Mr. Shultz, represented by the bill to have been the vice-president and actual manager of the railroad company, was present in the office of Col. Dyer, where the papers were executed, and said, "I assent to the transfer of possession."   As a matter of fact, all there was of the property of the company was a road-bed about three miles in length, upon which no cars were running; it was unoccupied, dead property.   After the sale, Mr. Shultz accepted employment from the plaintiff, and received pay for his services in looking after the property, etc.   Last February the directors of the original company made a lease to a Mr. Parker, and thereupon Mr. Parker attempted to resuscitate this dead track and to put it in a condition for operation.   In so

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

doing he encountered the representatives of the plaintiff, who claimed possession, and said to him, "You have no right to possession." That is the way the testimony, as I read it, shapes itself before my mind; and the question, which is very suggestive, is whether this does not come within what parties sometimes and very appropriately term "a scramble for possession," as to which the courts seldom interfere in an equitable proceeding.

Now, as I read the affidavits, here is an unoccupied, abandoned, dead track, and during the winter, at least, in the actual possession of nobody; the defendant claiming the right of possession under a lease from the original company, the plaintiff claiming the right of possession under certain decrees and sale, but no settled, absolute grasp of possession. Under these circumstances, should a court interfere by injunction to say in favor of one party or the other, "Your possession shall be protected, and the other party restrained?" My brother TREAT has not read all the affidavits, and perhaps if he reads them he may come to a different conclusion.

*Mr. Orrick.* There are a great many affidavits, and perhaps your honor may have overlooked some of them.

*The Court,* (BREWER, J.) I addressed myself to the question of possession first.

*Mr. Orrick.* Yes, if there is a scramble for possession.

*The Court,* (BREWER, J.) You cannot get an injunction against mere trespassers. The court might appoint a receiver and put both out of possession; but where there is a scramble for possession, I do not think the court ought to move by way of injunction.

*Mr. Orrick.* We understand that, and our position is, as far as the question of possession is concerned, there should be no question about it, upon the facts as we understand them to be, and as is shown by all these papers here.

*The Court.* Where you foreclose a lien of that kind, or of any kind, and the marshal sells the property, unless there is a specific order from the court to the marshal to take possession and transfer it, whatever legal rights you may have to the possession, do you get the possession? That is the trouble. You had a decree which said, "Sell this property." The property was sold. The purchaser had the right to possession. Now, how did he get possession? Did Mr. Shultz, by reason of the fact that he was vice-president and general manager, as you allege, have the right to say, "I will turn this property over, and give possession?" Because, unquestionably, here was a road-bed running some three miles in length, nobody operating or doing anything with it, just a dead road-bed.

*Mr. Orrick.* Three miles of track, and several thousand dollars' worth of personal property.

*The Court,* (BREWER, J.) But there was nobody there.

*Mr. Orrick.* But we put somebody there once under our deed and according to our deed.

*The Court*, (BREWER, J.) That comes back to the question, what right had Mr. Shultz, the vice-president, to turn over possession? Did it not require the action of the directors of the corporation itself?

*The Court*, (TREAT, J., *orally*.) The way the question shapes itself to my mind is this. You had your special decree for your lien; how did you gain possession? If there was an action at law as in eject-ment, and recovery had, the marshal would put you in possession under a writ of *habere facias*; but being in equity, it is not necessary, of course, that you should go through all these formal proceedings. Now the question Brother BREWER suggested is, the adverse party did surrender possession. That is a simple matter of fact. As you say, Mr. Shultz, the vice-president and actual manager, told you to go and take it. That is all.

*The Court*, (BREWER, J.) As I said this morning, I read the papers over last night and I came to a conclusion as to what should be done in the matter, and I was anxious that my brother TREAT should read the papers also, as he has done during recess, and he is of the same, or very nearly the same, opinion that I have expressed; so it seems to us that further argument is unnecessary; that there is not that clear showing of an actual, undisturbed, absolute possession of this property which will justify the court in restraining outside parties from interfering. We this morning got into a discussion of some matters outside of the present question as to the ultimate rights of the parties; and, whatever opinions were hastily expressed on the spur of the discussion, of course neither of us feel under any obliga-tions to hold to, when the ultimate rights of the parties come to be considered. The question is really whether, at the time this suit was instituted, there was that quiet, undisturbed, clear, and absolute pos-session which a court will protect against intruders. As a matter of fact, the property was an unoccupied roadway, just like a quarter sec-tion of land on which there was no improvements, and no occupation.

*Mr. Orrick.* Three miles of track completed, if the court please.

*The Court*, (BREWER, J.) Of course; but, upon the present show-ing, we agree that there is no such condition of things as would justify the court in granting the restraining order.

*Mr. Orrick.* In the view of the matter, would your honor be ready to entertain an application for a receiver? Here is a dispute liable to result in bloodshed to the contending parties, and we think the court ought to interpose.

*The Court*, (BREWER, J.) Before an application for receiver is en-tertained there should be notice given.

*Mr. Orrick.* I think we have a right to protect our rights in order to avoid trouble of that kind, and that the property may be preserved to whom it may belong. We ask your honor, therefore, to appoint a receiver to take charge of this property, and in the interests of peace, and we think the facts will justify such action.

*The Court*, (BREWER, J.) You ought to give notice of an application of that kind.

*Mr. Orrick.* The parties are in court.

*The Court*, (BREWER, J.) They might not wish to take it up without having a chance to prepare.

*Mr. Orrick.* I give notice now, that it may be heard to-morrow.

*The Court*, (TREAT, J.) The proposition involved is a very simple one. Your bill is a bill of peace, resting on possession by you, which the court asks you to show. Looking at your affidavits, you do not show that actual possession which the court requires in order to interfere, and when we look to the affidavits on the other side, the weight of the testimony is just the other way. There is somebody else in possession. On that state of facts the court has to pass, and that is all, on a motion of this kind. The rights of the parties, as ultimately they may be determined, is another question. The court cannot interfere in a scramble for possession, or give an injunction against trespassers; and on the other hand, of course, there is no trespass unless you have possession, and parties interfere when you were in possession. Hence, under all the rules concerning these matters, I do not see that an injunction can go. You must rest on the ultimate determination of these matters. Now, in regard to this other matter suggested, I only intimate (I have not consulted Brother BREWER in regard to it)—I do not see how, looking at the papers, if a man is building a road for you which belongs to you—

*Mr. Noble.* I wish to interrupt the court, simply to say that parties are present, and lest they might make a mistake about this matter, and think the court was deciding that they had possession, and base some action upon it, I think it well for the court, in view of the serious consequences that may occur on account of this, that it ought to be impressed upon them that there is no decision that they have possession.

*The Court.* As I say, it occurs to me that this is merely a scramble for possession.

*Mr. Noble.* And that scramble goes on, and each man decides for himself.

*The Court.* If you desire a receiver, notice should be given to the other side, that they may be ready, because that presents other questions.[1]

[1] *Ante*, 519.